## COVENANTS RESTRICTING CONDUCT OF LESSEE.

[Circuit Court of Lucas County.]

### THE HUEBNER-TOLEDO BREWERIES v. JOSEPH SINGLAR AND ANNIE SINGLAR.

Decided, March 17, 1906.

*Lease—Covenants Contrary to Public Policy—Restrictive Clauses Qualifying Use of Premises Leased—Or of the Conduct of the Lessee— Or of His Use of Other Premises—Distinguished from Transfer of Good Will—Is Beer a "Commodity"?—The Anti-Trust Act.*

1. Contracts in restraint of trade, not connected with nor for the protection of a good will sold or leased, and which are not mere reservations or qualifications as to the use of sold or leased premises, are contrary to public policy and void.
2. The covenant of a lease binding the lessee not to sell beer of any other manufacture than that of the lessor within a radius of one mile from those leased, is void as in unlawful restraint of trade.

WILDMAN, J.; PARKER, J., and HAYNES, J., concur.

This case has been submitted to the court upon a motion to dissolve a temporary injunction heretofore granted. The grounds of the motion are: (1) That the petition filed herein does not state facts sufficient to entitle the plaintiff to the equitable interference of this court by injunction; (2) that the plaintiff has an adequate remedy at law, and the injury complained of, if any should be sustained, is measurable and not irremediable in character.

This second alleged ground is manifestly involved in the first, because if the claim so stated is correct, it in itself would make the petition defective, so far as the jurisdiction of this court is concerned, as not stating facts sufficient to entitle the plaintiff to equitable relief. No other grounds are stated in the motion, and the question so presented requires an examination of the petition to determine its sufficiency or insufficiency. It is substantially as follows:

The brewing company named sues Joseph Singlar and Annie Singlar, alleging that the plaintiff is a corporation organized and existing under and by virtue of the laws of Ohio, engaged in the business of manufacturing and selling beer and having its principal place of business in the city of Toledo, Lucas county, Ohio. It alleges that at the date named Joseph Singlar was a tenant of another party of premises situated in said city, and was engaged at that time in operating a saloon thereon. That on said day the defendant, Joseph Singlar, informed the plaintiff that he had received notice to vacate said premises, and that, for the purpose of retaining possession of the same, an arrangement and agreement in writing was entered into between the plaintiff and the defendant, Joseph Singlar, as follows:

"September 9th, 1905.

"This agreement made this 9th day of September, 1905, between Joseph Singlar and the Huebner-Toledo Breweries Company, witnesseth—

"That the said Joseph Singlar immediately upon the purchase by the said the Huebner-Toledo Breweries Company of the premises owned by Michael Szopko and now occupied by the said Joseph Singlar as a saloon, said property being located on Genesee street, between Ann street and Whittemore street, in the city of Toledo, Lucas county, Ohio, and known as No. 624 Genesee street, the said Joseph Singlar will lease said premises for the period of five (5) years at the rate of ten dollars per month and that during the said period of five years said premises will be used for the sale of no other beer, including bottled beer, than of the manufacture of said the Huebner-Toledo Breweries Company, its successors and assigns, and that he will not during said period of five years engage in the sale of any beer, including bottled beer, except of the manufacture of said Huebner-Toledo Breweries Company, its successors and assigns, within one-half mile of said premises, and that he will not assign said lease or sub-let said premises, and the said the Huebner-Toledo Breweries Company agrees to purchase said premises if the same can be secured for not more than $2,500, and that the title to said premises is clear and that there are no restrictions upon the use of said premises, and will make said lease to said Joseph Singlar immediately upon purchase of said premises."

The petition alleges substantially that upon the execution of this written agreement the plaintiff purchased the property mentioned for the sum of $2,700, and immediately thereafter offered to execute to Joseph Singlar a lease for the same for the period of five years at $10 per month, but the defendant refused to execute or accept the lease unless his wife, the other defendant named in the petition, Annie Singlar, would be made a party to the same, and thereupon and in consideration of the plaintiff agreeing to execute said lease to both said defendants the following covenant and agreement was inserted in the said lease and agreed and consented to by both of the said defendants, to-wit:

"And the said parties of the second part (Joseph Singlar and Annie Singlar) in consideration thereof, do hereby covenant and agree to pay the paid party of the first part (the Huebner-Toledo Breweries Company) its successors or assigns, as rent for said premises the sum of ten dollars per month payable on the first day of each and every month, and hereby covenant that during said period of five years they will not engage in the sale on said premises or within one mile thereof of any beer, including bottled beer, except of the manufacture of said Huebner-Toledo Breweries Company, its successors and assigns."

The petition alleges that the said defendants, Joseph and Annie Singlar, are owners of the premises known as lot No. 70 named premises are situated within one hundred feet of those described in the lease, and that the defendants, contrary premises described in the lease, and that the defendants, contrary to the covenant, or perhaps both covenants mentioned, are now engaged in selling on said lot No. 70 beer other than that manufactured by the said plaintiff, to the irreparable damage of the plaintiff. The petition says that neither of the said defendants is the owner of any property not exempt from execution, and that the plaintiff has no adequate remedy at law to protect its rights.

The prayer of the petition is for an injunction to restrain the defendants from engaging in the sale, for five years from September 9, 1905, on said lot No. 70 in Robison's Riverside

Addition to the city of Toledo, Lucas county, Ohio, as principal, agent or employe, of any beer except that manufactured by the Huebner-Toledo Breweries Company, its successors and assigns, and for such further relief as may be equitable.

It may be premised in the consideration of the issue presented that the covenant ·in the· lease which was finally executed by all parties to this case supplanted the covenant incorporated in the original contract between the plaintiff and Joseph Singlar. His wife was brought into the second arrangement, and the territory over which the restrictive clause was intended to operate was enlarged; instead of being confined to a space of one-half mile from the leased premises it was extended to a space included in a circumference of one mile therefrom.

The substantial question, and almost the only question involved, is as to whether such a covenant as we have before us is valid and enforceable in equity, or whether it is contrary to public policy and void. In the able arguments made orally and upon brief to this court many adjudications have been cited bearing more or less closely upon the question stated. It is unnecessary· and would not be profitable to recapitulate or review all of these decisions, or indeed, very many of them. It has seemed to myself that some confusion has arisen, not only in the argument, but in the language of some of the judges rendering the decisions to which we are cited, growing out of the fact that no close distinction is taken between a reservation of the use of property leased or conveyed and a restriction upon some action of the vendor which is intended to protect the vendee in the possession of property and any good will which may attach to it.

In the one class of cases, we have such clauses as that found in the case of *Sleins* v. *Dorman*, 25 O. S., 580. This was a qualification of the use of the premises transferred, and a similar qualification perhaps is that found in one of the principal cases cited by counsel for the plaintiff, *Ferris* v. *American Brewing Co.*, 155 Ind., 539.

The covenant in the other class of cases is almost, if not quite, invariably associated with a sale or transfer of good will

attaching either to premises or to a person. It may involve a trade which has grown up and has become a sort of an appurtenance to some premises used for mercantile purposes or otherwise, or it may have reference to the personal skill of a vendor; but in either case it involves the protection to a vendee of the full benefit of his purchase.

In such case the clause is not, in one sense, restrictive. It indeed restricts the right of the vendor to do certain things, but there is no restriction upon the vendee. But in the other case to which I have referred—in the first class mentioned—the restriction is not upon the vendor at all, but it is upon the vendee. It is a qualified use of the premises leased or sold. It is just as clearly so as in a dedication of land to a city for the purposes of a street or any public structure, or in a lease of property to be used as a hotel or saloon, or any other structure or business.

In the one case, it is a reservation from the conveyance itself. In the other case, it is a restriction upon conduct of the vendor or lessor, designed to prevent him from interfering with the full use of that which he has granted or leased to his vendee or lessee. In the adjudications which have been cited to us, and others which we have examined, we have found it not very hard to make this classification. And no case has been cited wherein a contract, which is purely restrictive upon a vendee or lessee and where there has been no possible conveyance to him of a good will attaching either to a person or premises, has been upheld. In other words, in all these cases where an attempt has been made to restrict the conduct of a vendee or lessee, or to restrict the conduct of any one else (although upon an ample consideration perhaps), so as to prevent full liberty of action by him in carrying out his vocation, whatever it may be—I say that in no case of this character have we been able to find adjudications upholding such covenants.

Now, in the case at bar, it is not claimed in the petition that the qualified use of the leased premises has in any way been violated by the vendee. There would seem to be no question that the plaintiff, being the owner of the premises leased, had a

right to insert in the lease any qualification as to use that seemed advisable and to the interest of the lessor. But the question here is not that. The question is as to the power of the lessor, in consideration of the purchase of the property and the leasing of it to the lessees, to bind the lessees by contract not to engage elsewhere in the business of vending beer other than that manufactured by the plaintiff.

Some suggestion was made during the argument before us that the so-called Valentine Anti-trust Law of Ohio might have application here, and the response was made by one of the counsel that this act has been declared unconstitutional by one of the circuit courts of the state. This seems to have been correct. But it also appears that by a very recent adjudication of the Supreme Court the act has been upheld, and in the upholding of the statute the judge rendering the opinion for the court has announced some principles which may be a guide to us in the consideration of this case. We refer to the case of *The State of Ohio* v. *Gage*, 72 O. S., 210.

Before reading from this opinion, or from the statute which it upholds and to a certain extent construes, I will make some reference to a question incidental to the one under inquiry, which has received consideration from the courts of some states. It is this: Whether any public policy of the state is infringed upon, or violated, by a restriction upon the sale of a commodity of the kind mentioned in this petition and in this contract. It is not exactly an article of food, nor an article of use, in the ordinary sense, otherwise perhaps than as a beverage, and yet, under the broad language of the statute of Ohio to which I have referred, it may well be said that to except beer from the definition of the term "commodity" would be judicial legislation. In the case of *Anheuser-Busch Brewing Association* v. *Houck, et al*, decided by the Court of Civil Appeals of Texas in 1894, and reported in the 27th S. W., 692, it was held:

"1. A contract by a brewing association with dealers in a city to furnish them beer in bulk, and not to furnish it in bulk 'to any other party' in such city for one year, is not void as against public policy and in restraint of trade, so as to prevent a recovery for beer sold thereunder.

"2. A combination of persons and firms in a city for the control of the sale of beer and the cessation of competition *inter se* is not void at common law as against public policy, although in restraint of trade, since beer is not an article of prime necessity, and its sale is closely restricted by public policy.

"3. The act of 1889 relating to conspiracies against trade, forbids combinations of persons or corporations to prevent competition in the purchase, sale, or transportation of merchandise, and all agreements not to sell below a certain or graduated price, or to establish 'the price of any article or commodity between themselves and others to preclude free competition among themselves or others in its sale or transportation.' *Held:* That a contract between liquor dealers in a city for the control of the beer traffic there and in all markets tributary thereto, each turning 'all the beer he or they may handle or control into this co-partnership,' violates the above statute, and is void, although the persons so combining are the only dealers in the city, and the price was not increased to consumers."

I need not read from the case because this question was not especially, if at all, argued before us by counsel, but in our consideration of the matter the question has occurred to us and perhaps should be met in passing.

The Ohio statute passed upon in the case of *The State* v. *Gage, supra,* is in the the 93d Ohio Laws, 143. Eliminating such portions of the act as have no special reference to the present case, it appears from its title that, among its other objects, is the promotion of "free competition in commerce and all classes of business in the state." Section 1 provides:

"That a trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them for either, any or all of the following purposes:

"1. To create or carry out restrictions in trade or commerce.

"2. To limit or reduce the production, or increase, or reduce the price of merchandise or any commodity."

Stopping for a moment, it may be said that it was argued during the presentation of this motion to us that the effect of this covenant and its execution would not be the reduction of production or increase of the price of beer in the circumscribed territory. But it is to be noted that this statute has

application to other matters than the mere limitation or reduction of production or increase of the price of merchandise or any commodity. That is only the second clause of this statute. The first, as I have read, is the creation or carrying out of restrictions in trade or commerce, and nothing is said in that clause as to the effect of such transactions. The section continues:

"3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce, or any commodity.

"4. To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this state.

"5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity, or by which they shall agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. Every such trust as is defined herein is declared to be unlawful, against public policy and void."

Section 8 provides—

"That any contract or agreement in violation of the provisions of this act, shall be absolutely void and not enforceable either in law or equity."

Section 9 provides—

"That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this state."

Along the same line, and following the principle of the decision in the Texas case to which I have referred, we have the case of *Alice G. Carr* v. *The J. Walker Brewing Company et al*, decided in the Superior Court of Cincinnati, General Term, February, 1906, and reported in Vol. 3, *Ohio Law Reporter*, page 618, Judges Ferris, Hoffheimer and Caldwell uniting in the opinion. The syllabus reads:

"The laws of Ohio with reference to the liquor traffic have always been more liberally construed than in some of her sister states, and the Ohio law rendering void all contracts in restraint of trade is applicable to contracts having reference to the sale of liquor."

I am not quite sure that this court would go so far as to say that the laws of Ohio are more liberal than the laws of other states in this respect, and indeed, this superior court says only that they have always been more liberally construed than in some of her sister states, especially, one of my associates suggests, in Indiana. The contract involved in the case cited was one wherein under a transfer, or in connection with a transfer of the good will of certain premises, the vendors, Alice G. Carr and Thomas Gilmore, stipulated as follows:

"* * * we will not again enter into the grocery or saloon business within three blocks or squares, east, west, north or south, of said premises, within eighteen months from date hereof."

It will be noted that this case falls within the class of contracts which I have heretofore mentioned as coupled with the transfer of the good will, and designed to afford to the vendee the fullest protection in the enjoyment of the property and all the good will which has grown up in connection therewith. The court in this case held that the contract was so in restraint of trade as to be void, seemingly relying upon several adjudications of Ohio which have been cited in the case before us, including *Lange* v. *Werk*, 3 O. S., 519; *Field-Cordage Company* v. *Cordage Company*, 6 C. C., 15; *State* v. *Gage*, 72 O. S., 210.

Resuming consideration of the *Gage* case, Judge Shauck, on page 229, says:

"The purposes named in these sub-divisions do not relate to any contract with respect to the use of one's property or his faculties.  They are purposes which made contracts void at common law as being opposed to public policy, which, according to legal views which still prevail, requires that the conditions of competition be maintained.  They are also within the combinations which were prohibited by many ancient statutes."

Some force is attached to the use of such language as this by counsel for the plaintiff, who earnestly urge that the Ohio anti-trust statute is after all but a placing of penalties upon transactions which before were so unlawful as to be non-enforceable as contracts.  But upon pages 230-231 the judge gives expression to some ideas as to what classes of contracts would be deemed contrary to public policy under the Ohio adjudications, even prior to the enactment of this statute.

On page 230:

"Brief attention to the development of the law upon the subject will show that argument" (along a certain line which he mentions) "would be unavailing rather than unnecessary.  So long recognized and so frequently applied in the same jurisdictions that their congruity must be admitted are the doctrines that every contract in restraint of trade is void if nothing else appears; but, nevertheless, that property used in the competition of trade may be sold, including the good will of the vendor's business, and that to effectuate the sale of the good will, the vendor may make a valid stipulation to abstrain from competition if the stipulation is limited to that purpose."

In other words, if the stipulation is limited to the protection of the good will, then it will be enforced.  He continues: "And courts of equity have even required members of a co-partnership to abstain from the conduct of a rival business."

The reason for this is manifest.  It would interfere with the purposes of a partnership; it would interfere with the interests of the co-partners.  And he adds:

"In short, the courts have uniformly denounced contracts in restraint of trade unless the restraint results as an incident from the use of one's property and his faculties.  The distinction is one of easy grasp and it is too late to question its

importance. Within the limits of the present case, it is obvious that the effect of the statute is to prohibit affirmatively such contracts and transactions as were previously unlawful, but which could be so adjudged only when the aid of the courts was invoked for their enforcement. It must be obviously unavailing to urge the constitutionally protected right to make contracts with reference to one's property and his faculties as an objection to a statute which does not prohibit or restrain the power of making such contracts.''

Now, manifestly, a contract which provides that one selling a business in a certain locality shall not himself enter into competition in that locality with the person to whom he has sold, in the carrying on of the same kind of business, is a very different thing from a contract, based upon no matter how valuable a consideration, that some person to whom a property is sold shall not enter into competition with the vendor in any other localities than on the particular premises so conveyed. It may be said, indeed, that the restricting of the use of the premises conveyed is in partial restraint of trade. So it is; but it is the kind of reservation which a person has a right to make in his grant. Deeds have been not unusual, and have been upheld, that contained the provision that no liquor shall be sold at all upon the premises conveyed, or if any sales of liquor are made, that the title shall revert to the grantor. It is said that the city of Vineland, New Jersey, is practically under prohibitory law by reason of the incorporation of such clauses in the title deeds of vendors of the property. And there is no more reason to set aside and ignore as invalid, contracts or reservations of this character in conveyance or leases than there would be to set aside a restriction to a particular use of property conveyed to be used as a church, or a school, or a street, or an alley. In all these cases the grantor keeps something back. He does not sell all he has. He may not desire to use, and may not be able to use, the property for any purpose himself, but he may put a qualification upon its use by his vendee or his lessee.

Some confusion may arise in the mind here from the fact that the consideration of this covenant is the leasing of a par-

ticular property, but to our minds it is not different from a case where, in consideration of a money payment or any other valuable thing, a person agrees to keep out of a certain market in the way of buying or selling or manufacturing any kind of commodity.

It is to be noticed that there is no stipulation in this contract, no provision whatever, that the Huebner-Toledo Breweries Company shall sell any of its beer to these defendants. There is no power, in other words, left or given by this lease to the covenantors in it—to the defendants—to continue in the business of selling beer at all, unless by the permission, express or tacit, of the lessor. If the breweries company should conclude not to furnish the defendants with beer, and if this covenant were to be upheld, the defendants would be deprived of any power to use such skill as they may have in the carrying on of this business anywhere within the circumscribed territory. In other words, they could be put out of the trade entirely by the will of the lessor. There is no provision in this writing either that the lessor shall furnish or that the lessees shall buy any of the beer manufactured by the plaintiff, but the provision strikes entirely at the conduct of the lessees with reference to the beer manufactured by other people or concerns.

In this connection some reference may be made to the principle stated in 2 Beach Modern Law of Contracts, Section 1565, as follows:

"There are two grounds on which rests the doctrine that a contract in restraint of trade is void as against public policy. One is the injury to the public by being deprived of the restricted party's industry; the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family."

And in the same connection, 1 Page on Contracts, Section 432, should be cited.

In the case of *People* v. *Stock Exchange*, 170 Ill., 556-567, it is said:

"The common law refused to recognize restrictions upon trade and business among citizens of a common country. Under this

rule of the common law the right of the laborer to dispose of his skill and industry, and to contract in reference to the same with whom he pleased and at such contract rates as might be agreed upon, was recognized and not allowed to be trammeled with restrictions which interfered with individual action and liberty.''

There is a recognition in this decision of the principle enunciated in the text-book to which I have referred, 2 Beach Modern Law of Contracts, that the policy of the legal rule is two-fold, and that one of its objects is the protection of the individual in the right to use his own faculties. Reading further from the case:

''Combinations and associations of men have no right to place restrictions upon the right of an individual to contract and engage in business, employing such means and agencies as are not prohibited by law.''

And taking up the other phase of the proposition the judge says:

''Effort to prevent competition and to restrict individual efforts and freedom of action in trade and commerce are restrictions hostile to the public welfare, not consonant with the spirit of our institutions and in violation of law.''

In further support of the views which I have been endeavoring to express I read from this Illonois case as follows:

''*  *  *  it seems that the only cases, apart as we have indicated from those just mentioned, in which there can be any legitimate occasion for a covenant on the part of one not to engage in the business proposed to be carried on by another, are those in which the covenantor has sold to the covenantee his stock in trade, as in the case of a merchant, or his part of it, as where one mercantile partner sells out to the other or to a stranger, or, being a professional man with an established practice, as a physician, dentist and the like, or mechanic with a shop and accustomed patronage, as a blacksmith and the like, or, if he be a manufacturer, sells out his practice or business or plant, with or without an express stipulation as to its good will, and in the same transaction and as part of the thing sold

and as in part the consideration for the price paid, agrees not to engage in that business, profession or trade, as the case may be, within the territory covered or supplied by the business, practice or factory purchased during the time the vendee shall be interested therein.   *   *   *   But there is no room for the application of these reasons in cases in which the covenantee does not purchase the business, practice, trade or plant of the covenantor and the transaction involves nothing but a bald covenant in restraint of trade for which there is no other consideration than the payment of money for the obligation itself.   In such cases the business of the covenantor is not transferred merely; it is destroyed.''

Referring further to the loss to the public by reason of restriction upon the use of the faculties of an individual, the judge says:  ''Labor is thrown out of employment; 'the same number of mouths' are not fed.''

In other words, the laborer, instead of being a producer, becomes a consumer.   Further:

''The consideration the covenantor receives is not the just reward for his skill and energy and enterprise in building up a business, but is a mere bribery and seduction of his industry and a pensioning of idleness.   The motives actuating such a transaction are always in a sense sinister and baleful.''

We should hardly like to say that here.   The motives may be, and probably were, altogether innocent; that is, there may have been no thought of any impropriety in the making of such a contract, or any idea on the part of any of these parties that they were either violating public policy or a public statute.

Some suggestion having been made in argument that no restriction of this character should be upheld unless coupled with a sale of good will, it seems to have been understood on the other side as a claim that there can be no sale of good will except in connection with some tangible plant, some real estate, or some other property to which the good will pertains.   If counsel for the motion entertained that view, we think that it would be going too far.   There may be such a thing as a sale of good will as appertaining to a professional business, or an industry, where there has been no transfer whatever of

any tangible property, real or personal. The cases mentioned in this Illinois report of the sale of the professional business of a lawyer or a doctor would be an illustration of a class of cases where the good will may be sold in connection perhaps with a business, but without any transfer whatever of any other property right; but still it is a sale of the good will. And sometimes it may be coupled with a direct sale of one's own faculties, or one's own skill in business, in connection with a covenant that while working for the covenantee he will give the covenantee the benefit of his whole time and he will do no work for any one else. This is the kind of contract which we find often in the employment of agents or salesmen, wherein the work of the person employed is given exclusively to the employer.

I have given perhaps more time than I ought to the consideration of this case, but I have done it in view of the importance and interest of the question presented, and also the fact that our view is not in accord with that which seems to have been entertained by the court below.

I might add to all that has been said that a reading of this petition does not disclose any apparent danger to the petitioner that it will suffer damage by reason of any act or conduct of the defendants. It is not said in the petition that there is any threat of a continuance of sales. It is not said that the defendants have, or ever have had, any good will of value pertaining to the saloon in which it is said they are now engaged in business. As already indicated, there is no averment that the plaintiff was to supply them with beer. There is no averment that the defendants are selling other beer than that manufactured by the plaintiff in the saloon which was leased by the plaintiff to the defendants. There is no averment that the defendants, or either of them, have any personal skill or ability whatever to sell beer, or have any patronage, any custom, which has grown up, which it would be a loss to the plaintiff not to have turned to the purchase of goods manufactured by it. All of these latter matters, to which I have referred, might perhaps be cured by an amendment to the petition, provided the facts exist which would warrant such amendment. But the other con-

siderations which have been given to the particular covenant itself and the principles of law governing its construction and the determination as to whether it is valid or invalid, enforceable or non-enforceable, would seem to be vital to the rights of the parties and hardly susceptible of change by amendment.

Our conclusion is that this motion should be sustained, that the injunction should be dissolved, and it will be so ordered.

*Swayne, Hayes, Fuller & Tyler* and *G. P. Hahn,* for plaintiff in error.

*F. C. Schaal* and *Fell & Connolly,* for defendants in error.