THE PEOPLE *ex rel.* William W. McIlhany

*v.*

THE CHICAGO LIVE STOCK EXCHANGE.

*Opinion filed December 22, 1897.*

1. PUBLIC POLICY—*right of individuals to follow business methods which tend to create competition.* Men engaged in trade and commerce may advertise, employ solicitors and offer rewards and inducements to secure trade without violating the law of the land, as such action is in the interest of the public in creating competition.

2. SAME—*efforts to prevent competition by restricting individuals are against public policy.* Efforts to prevent competition by restricting individual efforts and freedom of action in trade and commerce are hostile to public welfare, not consonant with the spirit of our institutions and in violation of law.

3. SAME—*by-laws must be reasonable, and subordinate to public law.* The by-laws which a corporation may adopt for its guidance and government must be such as are reasonable for corporate purposes and within charter limits, and must be subordinate to the constitution and law, and not against the policy of the State nor against public welfare.

4. SAME—*by-law of the Chicago Live Stock Exchange held to be in restraint of trade.* A by-law adopted by the Chicago Live Stock Exchange which prohibits members from employing trade solicitors not members of the association, which limits the number of solicitors which may be employed by members in certain States, and provides that such solicitors must be paid a fixed salary and not allowed to work on commission, is unlawful, being hostile to public welfare and in restraint of trade and commerce.

5. CORPORATIONS—*when State may claim forfeiture for abuse of franchise.* An attempt by a corporation to place restrictions upon trade and commerce and to fetter individual action among its members by preventing competition is hostile to public welfare, and is such an abuse of its corporate franchise as authorizes the State to claim a forfeiture of its charter by an information in the nature of *quo warranto.*

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

On January 24, 1894, Jacob J. Kern, as State's attorney of Cook county, filed in the circuit court of that county a petition, upon the relation of William McIlhany, for leave

to file an information in the nature of *quo warranto* against the Chicago Live Stock Exchange. From a judgment denying the prayer of and dismissing that petition an appeal was prayed and allowed to this court.

The material facts shown by the petition are as follows: Appellee here, respondent below, is a corporation incorporated under the laws of the State of Illinois. The charter states that the object for which the corporation is formed is to establish and maintain a commercial exchange; to promote uniformity in the customs and usages of merchants; to provide for the speedy adjustment of all business disputes between its members; to facilitate the receiving and distributing of live stock as well as to provide for and maintain a rigid inspection thereof, thereby guarding against the sale or use of unsound or unhealthy meats; and generally to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits.

The petition charges that all of the live stock commission merchants who do business at the stock yards in the city of Chicago are members of said corporation, and that through such members said corporation has and exercises entire and absolute control over all the live stock commission business transacted at said stock yards; that because of the control which said corporation has acquired over the live stock commission business it is impossible for any one who is not a member of said corporation to transact a live stock commission business at said stock yards; that relator is engaged in the live stock commission business at said stock yards and is a member of said corporation; that he paid for said membership, and the same is worth, the sum of $500; that the said corporation, without any power, right or authority, has assumed to enact the following rule or by-law:

"Sec. 7. There shall be no solicitor employed who is not a member of this exchange. There shall be no solicitor employed except on a stipulated salary, which shall

not be contingent on commission earned. Members of the exchange shall file with the secretary thereof, within five days of the time of employment, the name and post-office address of their traveling solicitors. Members shall not employ to exceed three traveling solicitors for each firm in the States of Indiana, Michigan, Wisconsin, Illinois, Missouri, Iowa and Minnesota. Members of a commission firm may solicit in the aforesaid States, provided they be counted as the solicitors allowed therein, and provided further that they comply in all respects with the restrictions governing such solicitors. It shall be a violation of this rule for any solicitor representing, or claiming to represent, a commission firm located in another market, to solicit for any Chicago firm in the States before named; and members shall be held responsible for any violation of this section by their partners or employees at other market centers, and shall be held accountable for the acts of any solicitor who, under the guise of soliciting for a branch house, invades the territory above described and solicits for a Chicago firm. Members may employ an unlimited number of solicitors to solicit outside of the foregoing prescribed territory, provided they comply in all respects with the restrictions governing solicitors. It shall be a violation of this rule for any non-resident member or stockholder of any commission firm to solicit for any commission firm in which he may be interested, unless he be duly registered and employed as a solicitor under the rules and regulations provided. It is provided further, that members representing commission firms or incorporated companies shall be held responsible for any violation of this rule by the non-resident partners or stockholders of said firms or corporations."

The petitioner charges that the above rule operates in restraint of trade and interferes with the just rights of relator and other members of said corporation in the management and conduct of their business; that for the enforcement thereof said corporation has enacted that "any

member of this exchange, or firm in which he may be a partner, violating any of the provisions of this rule, shall be fined not less than $250 nor more than $1000 for the first offense; for a second offense, not less than $500 nor more than $1000, and if either of such fines is not paid within three days said firm shall be suspended from membership until same is paid; for a third offense they shall be expelled from membership in the exchange." The petition further charges that the business of relator, as well as the business of a large number of other members of the said corporation, extends into the territory comprising the States mentioned in the above rule, and that relator and the other members of said corporation have, and by law ought to have, the right to conduct and extend their business in said territory, and for that purpose to employ such and so many solicitors as they may see fit; that relator and a large minority of the other members of said corporation desire to conduct their business in said territory in open competition; that relator and others of the members of said corporation have engaged solicitors who are not members of said corporation; that said corporation threatens to enforce the provisions of the above rule against relator and said other members, and to expel them from the said corporation; that such action will ruin the business of the members against whom it is taken.     The prayer is for leave to file an information in the nature of *quo warranto* against said Chicago Live Stock Exchange, requiring it to appear and show by what right it assumes to exercise the privilege and franchise of enacting said rule or by-law.

On the filing of this petition the court entered a rule directing the respondent exchange to show cause why the petition should not be granted.     The exchange filed its answer to the rule, verified by the affidavit of its secretary.     The facts disclosed by the answer show that the exchange does no business of any kind itself, but is an organization for the mutual benefit of its members in the

field indicated by the objects stated in its certificate of incorporation; that it has a membership of about 700 persons, mainly live stock commission merchants; that each of its members voluntarily sought such membership, and agreed, in joining it, to abide by such by-laws and rules as it might make; that the exchange has no market and conducts no market; that the Union Stock Yards are the separate and exclusive property of another and different corporation, viz., the Union Stock Yard and Transit Company, a corporation for pecuniary profit, organized by a special act passed April 13, 1865; that upwards of 30,000 persons are employed in the yards, of whom only a small number are members of the exchange; that the exchange has no property at the stock yards except a leasehold of one room for a term of one year; that its rules are adopted in order to carry out the objects of its creation above set forth; that its rules are operative upon and apply to such persons only as have voluntarily sought and obtained membership; that the power of the exchange to make rules, and the validity of its rules establishing uniform rates of commission to be charged by its members, and determining that they may deal as live stock commission merchants only with members of the exchange, have already been inquired into in this court and sustained, both in proceedings by *quo warranto* and by injunction, judgment in the latter case being affirmed both by the Appellate and Supreme Courts. The answer then sets up the substance of the opinion of this court. It also alleges that many evils formerly existed which the rule as to solicitors would be calculated to prevent, among others a tendency to destructive rivalry in the number of solicitors who are sent out into the country by members to solicit shipments of live stock to their respective employers, amounting to a war of solicitation by competing houses, in which those unable to carry it on were defeated and driven out of business, the business demoralized and left in the hands of the victors in the war; that dis-

honest and irresponsible and disreputable solicitors were employed, who used dishonest, irresponsible and disreputable methods and misrepresented the character and credit of rivals; that the business of commission men is confidential and based on a trust relation, rendering it difficult to ascertain and prove the acts of dishonest solicitors, but that such acts bring discredit on the entire trade, and often brought on bitter disputes between members and led to the sale of diseased live stock; that the rules requiring uniformity in the rates of commission and forbidding rebates of commission to shippers were frequently violated by commission merchants, who resorted to the device of appointing consignors as solicitors of their own shipments, and paying to shippers rebates of commission under the guise of compensation for services as solicitors; that the appointment and payment of compensation to alleged solicitors was also used as a collusive device by money lenders to cover usurious loans to commission merchants, and by railway employees to cover extortion and unjust discrimination in the use of transportation facilities; that these rules in question would tend to prevent these evils, and to settle disputes and promote uniformity and co-operation among the members; that membership is a voluntary matter, and that any dissatisfied member can withdraw at any time; that each member, by joining the association, freely and voluntarily surrendered a portion of his natural liberty in the methods of doing this particular business in order to secure the greater advantages of co-operation, uniformity, mutual protection, the settlement of disputes and exclusion of the disreputable methods and diseased products from the business.

The questions presented upon the petition and answer were: First, in enacting said rule or by-law, has appellee abused its corporate franchises? and second, conceding that the enactment of such rule or by-law is an abuse of appellee's franchises, can that abuse be corrected through

an information in the nature of *quo warranto?* The trial court held that the by-law is valid, and thereupon rendered a judgment denying the prayer of the petition and dismissing the same. From that judgment the cause comes, on appeal, to this court.

JACOB J. KERN, State's Attorney, (MORAN, KRAUS & MAYER, of counsel,) for appellant:

In all classes of business the employer and employee should be allowed to contract with each other, unrestrained by others who may demand that the one shall give more or the other receive less, and, as a general rule, when restrictions are placed upon their rights by combinations or associations of men they will be regarded as in violation of law, and void. *Stanton* v. *Allen*, 5 Denio, 434; *People* v. *Fischer*, 14 Wend. 9; *Morris Run Coal Co.* v. *Barclay Coal Co.* 68 Pa. St. 173; *People* v. *Medical Society*, 24 Barb. 572.

The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property to the extent that he is thus denied the right to contract. Our constitution guarantees that no person shall be deprived of life, liberty or property without due process of law. *Frorer* v. *People*, 141 Ill. 171.

The property which each one has in his own labor is the common heritage, and, as an incident to the right to acquire other property, the liberty to enter into contracts by which labor may be employed in such way as the laborer shall deem most beneficial, and of others to employ such labor, is necessarily included in the constitutional guaranty. *Coal Co.* v. *People*, 147 Ill. 66.

Corporate franchises are granted in trust that they be used to attain the purpose for which they are granted,

and on condition that they be not used to the public detriment.    2 Morawetz on Private Corp. sec. 1024; 2 Beach on Private Corp. sec. 840.

The State is not required to prove an actual injury. It is a sufficient cause of forfeiture if the act be such as, in the nature of things, is calculated to produce injury. 2 Waterman on Corporations, sec. 427; 2 Spelling on Extraordinary Relief, sec. 1820.

Whenever a corporation uses its corporate powers to promote or consummate acts which are in contravention of the public policy of the State it abuses its corporate franchise.    *State* v. *Railway Co.* 45 Wis. 579; *People* v. *Railroad Co.* 121 N. Y. 582.

Whatever tends to create a monopoly is unlawful, as being contrary to public policy.  2 Addison on Contracts, 743; *Morris Run Coal Co.* v. *Barclay Coal Co.* 68 Pa. St. 173; *Craft* v. *McConoughy*, 79 Ill. 346; *Railroad Co.* v. *Collins*, 40 Ga. 582; *Hazelhurst* v. *Railroad Co.* 43 id. 13; *Transportation Co.* v. *Pipe Line Co.* 22 W. Va. 600.

If a corporation does an act or enters into a contract which is in restraint of trade and in contravention of public policy, there is involved a public interest which the State must protect by proceedings in *quo warranto*. *State* v. *Railway Co.* 45 Wis. 579; *People* v. *Railroad Co.* 121 N. Y. 582; *People* v. *Chicago Gas Trust Co.* 130 Ill. 268.

PECK, MILLER & STARR, for appellee:

The granting or denying leave to file an information in the nature of *quo warranto* rests in the sound discretion of the court, and will be reviewed only for abuse.    *People* v. *Waite*, 70 Ill. 25; *People* v. *Moore*, 73 id. 132; *People* v. *Callahan*, 83 id. 128; *People* v. *Railroad Co.* 88 id. 537; *People* v. *Drainage Comrs.* 31 Ill. App. 219.

An information in the nature of a *quo warranto* does not lie for the enforcement or vindication of a supposed private right.    *People* v. *Cooper*, 139 Ill. 461; *People* v. *Drainage Comrs.* 31 Ill. App. 219.

By-laws or contracts in restraint of trade are illegal only in the sense that the law will not enforce them. They are simply void. The law does not prohibit the making of contracts in restraint of trade, but merely declines, after they have been made, to recognize their validity. *American Live Stock Com. Co.* v. *Live Stock Exchange,* 143 Ill. 210.

Power to make by-laws is incident to the grant of corporate existence. 1 Beach. on Private Corp. sec. 310.

A by-law cannot be said to be inconsistent with the law of the land merely because it forbids the doing of something which might have been lawfully done before, or requires something to be done which there was no previous obligation to do. *Goddard* v. *St. Louis Merchants' Exchange,* 78 Mo. 609.

A by-law of a trade company forbidding its members from carrying on the trade separately at a different place from that of the company's domicil is valid. Lumley on By-laws, 31; *King* v. *Fishermen of Faversham,* 8 T. R. 352.

A by-law of a company chartered for the purpose of maintaining uniform rates of insurance, which requires members to follow uniform rates, is valid. *People* v. *Underwriters,* 54 How. Pr. 228.

By-laws in partial restraint of trade are valid. Cook on Stockholders, (3d ed.) sec. 700 *a*, p. 1023; *Gunmakers' Co.* v. *Fell,* Willes, 384.

A by-law that the members of a news association shall not publish news furnished by other associations in the State of New York, news being gathered from the entire world, is valid. *Matthews* v. *Associated Press,* 61 Hun, 199.

Contracts in partial but not total restraint of trade, and in which the restraint does not go beyond what is reasonable for the protection of the interest of the parties, are valid. *Telegraph Co.* v. *Railroad Co.* 86 Ill. 246; *Brown* v. *Rounsavell,* 78 id. 589; *Fowle* v. *Parke,* 131 U. S. 88; *Linn* v. *Sigsbee,* 67 Ill. 75; *Navigation Co.* v. *Winsor,* 20 Wall. 64; *Shade Roller Co.* v. *Cushman,* 143 Mass. 353; *Match Co.* v.

*Roeber,* 106 N. Y. 473; *Wiggins Ferry Co.* v.*Railroad Co.* 73 Mo. 389; *Commonwealth* v. *Canal Co.* 43 Pa. St. 295; *Payne* v.*Railroad Co.* 81 Tenn. 507; Leake on Contracts, 735, 736; Wharton on Contracts, sec. 442; *Mitchell* v. *Reynolds,* 1 P. Wms. 181; *United States* v. *Freight Ass.* 58 Fed. Rep. 58; *Proctor* v. *Sergent,* 2 Scott, 289.

"Public policy" is a negative doctrine.   It constitutes a limitation upon the validity of contracts to the extent of defining what agreements the courts will not enforce. It is not a ground of affirmative relief.   *American Live Stock Com. Co.* v. *Live Stock Exchange,* 143 Ill. 210; *Steamship Co.* v. *McGregor,* 23 Q. B. Div. 598; 21 id. 544.

· "Public policy" must be clear and beyond dispute to be the ground of any decision of the court.   *Richmond* v. *Dubuque,* 26 Iowa, 191; *Swann* v. *Swann,* 21 Fed. Rep. 299; *Walsh* v. *Fussell,* 6 Bing. 161; Walker's American Law, 449; 2 Chitty on Contracts, (11th Am. ed.) 9, 664; *Kellogg* v. *Larkin,* 3 Pinney, 123.

Where a corporation has a general franchise, a particular act which it may have committed as an incident to the exercise of that franchise cannot be challenged in ·a *quo warranto* proceeding, because a *quo warranto* proceeding does not challenge the particular act, but challenges the entire franchise.   *People* v. *Whitcomb,* 55 Ill. 172; *Attorney General* v. *Salem,* 103 Mass. 138; *State* v. *Thresher Manf. Co.* 40 Minn. 213; *State* v. *Lyons,* 31 Iowa, 432; *People* v. *Turnpike Co.* 2 Johns. 190; *State* v. *Turnpike Co.* 38 Ind. 71; *State* v. *Gravel Road Co.* 37 Mo. App. 496; 2 Spelling on Extraordinary Relief, secs. 1773, 1812, 1819.

To warrant a court in entertaining an information in the nature of *quo warranto* a case must be presented in which the public, in theory at least, have some interest, and it is not an appropriate remedy against persons alleged to have assumed a trust of a merely private nature, unconnected with public interest.   High on Ex. Legal Rem. sec. 620.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

This corporation, organized as stated in its certificate of organization, was formed "to establish and maintain a commercial exchange; to promote uniformity in the customs and usages of merchants; to provide for the speedy adjustment of all business disputes between its members; to facilitate the receiving and distributing of live stock as well as to provide for and maintain a rigid inspection thereof, thereby guarding against the sale or use of unsound or unhealthy meats; and generally to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits." The purpose of this corporation, as expressed in this certificate of incorporation, is undoubtedly, if carried out to the fullest extent, in the interest of the people.

The common law refused to recognize restrictions upon trade and business among the citizens of a common country. Under this rule of the common law the right of the laborer to dispose of his skill and industry, and to contract in reference to the same with whom he pleased and at such contract rates as might be agreed on, was recognized and not allowed to be trammeled with restrictions which interfered with individual action and liberty. Combinations and associations of men have no right to place restrictions upon the right of an individual to contract and engage in business, employing such means and agencies as are not prohibited by law. The natural flow of trade and commerce must be unrestricted, and men engaged therein may accelerate its current by all means not unlawful. To this end men engaged in trade and commerce may advertise, employ men to solicit business and offer rewards and inducements to secure trade without violating the law of the land, and in so doing are exercising a right which is in the interest of the public, because competition cannot be hostile to public interests. Efforts to prevent competition and to restrict individual efforts and

freedom of action in trade and commerce are restrictions hostile to the public welfare, not consonant with the spirit of our institutions and in violation of law.

We said in *Frorer* v. *People*, 141 Ill. 171 (on p. 181): "The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property to the extent that he is thus denied the right to contract. Our constitution guarantees that no person shall be deprived of life, liberty or property without due process of law. (Art. 2, sec. 2.) And says Cooley: 'The man or the class forbidden the acquisition or enjoyment of property in the manner permitted the community at large would be deprived of liberty in particulars of primary importance to his or their pursuit of happiness.'"

In *More* v. *Bennett*, 140 Ill. 69, we said (p. 76): "Whatever may be the professed objects of the association, it clearly appears, both from its constitution and by-laws and from the averments of the declaration, that one of its objects, if not its leading object, is to control the prices to be charged by its members for stenographic work by restraining all competition between them. Power is given to the association to fix a schedule of prices which shall be binding upon all its members, and not only do the members, by assenting to the constitution and by-laws, agree to be bound by the schedule thus fixed, but their competition with each other, either by taking or offering to take a less price, is punishable by the imposition of fines, as well as by such other disciplinary measures as associations of this character may adopt for the enforcement of their rules. The rule of public policy here involved is closely analogous to that which declares illegal and void contracts in general restraint of trade, if it is not, indeed, a subordinate application of the same rule. As said by Mr. Tiedeman: 'Following the reason of the rule which prohibits

contracts in restraint of trade, we find that it is made to prohibit all contracts which in any way restrain the freedom of trade or diminish competition or regulate the prices of commodities or services.'"

In *Braceville Coal Co.* v. *People*, 147 Ill. 66, it was said (p. 71): "Property, in its broader sense, is not the physical thing which may be the subject of ownership, but it is the right of dominion, possession and power of disposition which may be acquired over it; and the right of property preserved by the constitution is the right not only to possess and enjoy it, but also to acquire it in any lawful mode or by following any lawful industrial pursuit which the citizen, in the exercise of the liberty guaranteed, may choose to adopt. Labor is the primary foundation of all wealth. The property which each one has in his own labor is the common heritage, and, as an incident to the right to acquire other property, the liberty to enter into contracts by which labor may be employed in such way as the laborer shall deem most beneficial and of others to employ such labor, is necessarily included in the constitutional guaranty."

In other jurisdictions the rule is the same. In *Rex* v. *Wardens of the Coopers' Co.* 7 T. R. 540, it was held that a by-law limiting the number of apprentices which any member of the company might take was void. In the case of *Tailors of Ipswich*, 11 Coke, 53, a corporation known as the Tailors of Ipswich enacted a by-law to prohibit any tailor from exercising his trade until he had presented himself before the corporation and proved that he had served seven years as an apprentice. This by-law was held void, as being in restraint of trade. See, also, *Gunmakers' Society* v. *Fell*, Willes, 384. Sustaining the same propositions are *Stanton* v. *Allen*, 5 Denio, 434; *People* v. *Fischer*, 14 Wend. 9; *Morris Run Coal Co.* v. *Barclay Coal Co.* 68 Pa. St. 173; *People ex rel.* v. *Medical Society of Erie*, 24 Barb. 570.

A case similar to that now under consideration was before the Court of Appeals of Kentucky in *Huston* v. *Reut-*

*linger*, 15 S. W. Rep. 857.   There the Louisville Board of Underwriters passed a by-law which, among other things, prohibited local companies from employing more than one solicitor, and regulated the manner in which the salary of such solicitor was to be paid.   For a violation of this by-law the offending member of the board would forfeit all rights as a member of the association.   A local company which had employed more than one solicitor sought to enjoin the enforcement of the forfeiture on the ground that the association had no authority to control the members in the employment of solicitors, etc.   A decree was entered in accordance with the prayer of the bill, which, on appeal, was affirmed, the court saying: "The majority of the members, under the guise of producing harmony in this business association, have taken from their individual members the right to determine how many men they shall employ in their private business, and then only such as the association may think fit for the position.   Nor can they employ a solicitor for a less period than six months, or offer a solicitor employment within twelve months after the solicitor has severed his connection with any member; are compelled to discharge those in their employ if they have more than one; and, if these by-laws are enforced, have placed their business under the control of the majority vote of the association,—a power the exercise of which was not given by the fundamental law of the order, and doubtless not contemplated when the association was formed.   *   *   *   The common law rule, recognized and adopted when business relations were not so multiplied and extensive as now and when less necessity existed for enforcing it, condemned all such restrictions upon trade and business intercourse with men as is found to exist in this case.   The right of one to control his own property as he pleases, and to employ those necessary to aid him in his business upon such terms as may be agreed upon, when not in violation of the law of the land, is the rule of the common law, and the right of the laborer to dispose

of his skill and industry to whom he pleases and for the price agreed on is embraced within the same rule.   In all classes of business the employer and employee should be allowed to contract with each other unrestrained by others who may demand that the one shall give more or the other receive less, and, as a general rule, when restrictions are placed upon their rights by combinations or associations of men, they will be regarded as in violation of law, and void."

When a corporation is created there goes with it the power to enact by-laws for its government and guidance as well as for the guidance and government of its members. This power is necessary to enable a corporation to accomplish the purpose of its creation. But by-laws must be reasonable and for a corporate purpose, and always within charter limits. They must always be strictly subordinate to the constitution and the general law of the land.   They must not infringe the policy of the State nor be hostile to public welfare. The by-law in this case is a restriction on freedom of trade and business. It trammels competition and prohibits an individual from contracting and engaging in business, and from using such agencies and means he may desire not hostile to general law.   It is not required for corporate purposes, nor is it included within the purposes declared in the certificate of incorporation. It is therefore unlawful, as this corporation had no right to exercise this power of enacting it under its franchise.

It is not every misconduct on the part of a corporation, or act not consonant with the purpose of its creation, that will destroy its life. An act to thus result must be one which tends to produce injury to the public by affecting the welfare of the people.   Where this results there is an abuse of corporate franchise.   (*People* v. *North River Sugar Refining Co.* 121 N. Y. 582.)   Attempts to place restrictions on trade and commerce and to fetter individual liberty of action by preventing competition are

hostile to public welfare and affect the interests of the people. Such attempts by a corporation are an abuse of its corporate franchise. Public policy requires that corporations, in the exercise of powers, must be confined strictly within their charter limits, and not be permitted to exercise powers beyond those expressly conferred. The State provides for the creation of corporations. The corporation is its creature, and must always conform to its policy. This duty on the part of corporations to do no acts hostile to the policy of the State grows out of the fact that the legislature is presumed to have had in view the public interest when a charter was granted to the corporation, and no departure from its charter purposes will be allowed which would be hurtful to the public. Where such act is done by a corporation the State may proceed to claim a forfeiture of its charter by an information in the nature of *quo warranto*.

The petition for leave to file an information in the nature of *quo warranto* should have been granted. The judgment of the circuit court was therefore erroneous and is reversed, and the cause is remanded with directions to grant leave to file the information.

*Reversed and remanded.*