## Richard A. Allen v. Chicago Undertakers' Association of the State of Illinois.

### Gen. No. 13,440.

BY-LAW OF UNDERTAKERS' ASSOCIATION—*what valid.* A by-law of an undertakers' association, incorporated, but not for pecuniary profit, by which personal solicitation of business is prohibited under penalty of suspension or expulsion, etc., is not unreasonable, and is not invalid.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed October 28, 1907.

Statement by the Court.    November 7, 1906, appellant filed a bill against the appellee, in which it is averred, in substance, as follows:

Complainant is a licensed undertaker, doing business at No. 284 North Clark street, Chicago, Illinois, and is and has been for the last ten years a member of the Chicago Undertakers' Association, which association is incorporated under the laws of Illinois as a corporation not for pecuniary profit. Its object is declared to be, "to secure harmony in business, and to cultivate a more friendly spirit socially, and bring to a higher state of perfection our profession; to disseminate correct principles of business management, the best means of protecting the interests of undertakers, as well as those of patrons, and to promote the interests of all recognized and legitimate undertakers." The following rules and by-laws have been enacted by said association:

"Section 1, Article 6: When a member is accused of any offense, he shall always be tendered a fair and impartial trial before conviction.

Section 2: When a man is found guilty by this association of wilfully violating any part of this Constitution or By-laws, he shall be fined not less than $10 and not more than $25 for the first offense, and

not less than $25 and not more than $50 for the second offense, and not less than $50 and not more than $100 for the third offense, and expelled for the fourth offense.

Section 8. Any member who shall be found guilty of degrading the profession by such unprofessional conduct as individually soliciting or employing parties to secure business before death as well as after, shall be dealt with according to Section 2 of this Article.

Section 2, Article 7: Any member in arrears for dues over six months, or having any unpaid fines standing against him for over thirty days, shall be suspended from all rights and privileges of this Association until all claims this Association may hold against him shall have been paid.

Section 3. Any member of the Association who has been suspended in accordance with Section 2 of this Article may, within six months after date of such suspension, petition in writing for reinstatement, and if all fines and dues for which he has been suspended are paid, he may, by a two-third vote of all the members present at a regular meeting of the Association, be reinstated. If, however, such suspended member refuses or neglects to make application within six months, his membership in said Association shall cease.

Section 6. A second suspension for the same offense other than the non-payment of dues shall be final, and reinstatement obtained only upon the unanimous consent of the members present at a regular meeting of this Association, and then only under such assurances of future good conduct and such penalty as the membership committee or association shall require.

Section 6. When a member is suspended, he shall not be countenanced as a member, and shall be deprived of all rights and benefits of this Association during suspension, and no dues shall accrue against him while suspended.

Section 2, Article 5: The Executive Committee of said Association shall consider and investigate all vio-

lations of the Constitution and By-laws of the Association.

Section 1, Article 11: When any charge or charges are brought against any member or members of this Association for violating the Constitution or By-laws, they shall be reduced in writing, giving to a reasonable certainty the time, place and nature of the misdemeanor, and shall be signed by the accuser, shall be presented to the Association at any regular meeting, and shall then be referred to the proper committee, who shall furnish the accused with a correct copy of the charges at least forty-eight hours before summoning the accused to appear before them to answer such charges. The accuser shall appear before said committee, and meet the accused face to face, and the committee before whom the charges are to be tried shall summon any witnesses whom the accused or accuser may demand."

By an arrangement between said association and the "North Chicago & Lake View Liverymen's Association," the latter association being composed of all the liverymen of Chicago, any undertaker, not a member of the Undertakers' Association, may and shall be deprived of the right to hire hearses, carriages, horses and drivers from such liverymen, or any of them, and the Undertakers' Association may cause such liverymen to so refuse, and said liverymen will so refuse. Said liverymen's association is so connected with said undertakers' association that its members will not furnish any of said things, or a driver, to any undertaker not a member of the undertakers' association, or who is suspended therefrom, and without the same undertakers could not carry on their business.

September 18, 1906, complainant was charged with, and subsequently found guilty of, violating section 8 aforesaid, in conducting a burial association, and was fined $25, which he refuses to pay. Said burial association is a voluntary association, and on the death of a member thereof the surviving members are as-

sessed to pay the funeral expenses of the deceased. Complainant was selected by said burial association as its undertaker, and was one of its officers. Said section 8 is unreasonable and is in restraint of trade, etc.

October, 1906, complainant was again cited to appear before the executive committee of said association, to answer alleged violations of section 8, by acting as undertaker for said burial association, but, by advice of counsel, did not appear or answer, and was again fined. Complainant is doing a large business, and if deprived of the right to employ hearses, etc., will suffer irreparable loss, and his business will be destroyed, and he is threatened with suspension for non-payment of said fines. Complainant has observed all rules and regulations of said association, and paid into the treasury thereof, as his initiation fee, the sum of $25.

The prayer is that section 8 be declared of no force or effect, that the undertakers' association be enjoined from enforcing the collection of fines for violation of section 8, and from suspending complainant from membership, and from exercising any influence on liverymen to withhold from complainant hearses, etc., and for general relief.

A temporary injunction was ordered as prayed. Appellee entered its appearance, and, November 16, 1906, moved to dissolve the injunction, assigning as cause, "there is no equity on the face of the bill," and January 2, 1907, the court dissolved the injunction and dismissed the bill for want of equity.

GEORGE G. BELLOWS, for appellant.

GEORGE F. MULLIGAN, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

No relief is sought by the bill against the livery-

men's association. The association is not made a party, nor are any of its members made parties, and counsel for appellant says in his argument that no relief is asked against the liverymen's association, and in his reply argument he says he does not consider the alleged agreement between appellee and the liverymen's association illegal. The bill asks to have section 8 of article 6 of appellee's constitution declared void, as being in restraint of trade and of appellant's rights in the premises, and that appellee be perpetually enjoined from enforcing it.

The questions to be determined are whether section 8 is unreasonable, in the sense that it is illegal or contrary to public policy, and whether appellant is equitably entitled to the relief prayed.

Section 8 is as follows: "Any member who shall be found guilty of degrading the profession by such unprofessional conduct as individually soliciting, or employing parties to secure business, before death as well as after, shall be dealt with according to section 2 of this article." Section 2 provides for the suspension of any member who shall have unpaid fines standing against him for over thirty days.

The words of section 8, "individually soliciting, or employing others to secure business, before death as well as after," clearly mean, as we think, personal solicitation of business, and do not prohibit the advertisement by a member of the association of his business, or competition in the prices of articles furnished, or for personal services. In this connection it may be observed that the business of undertakers is such that they have a peculiar advantage in the matter of advertising. Persons who attend funerals observe the articles furnished by the undertaker, and the manner in which his services are performed, and if such articles are proper and the undertaker's personal services are performed in a decent and orderly manner and suitable to the occasion, those present will be likely to remember this

when it becomes necessary for them to employ an undertaker.

The section does prohibit all personal solicitation for business at any time or place. It is possible, though hardly probable, that, in the absence of such a provision as section 8, some undertakers might visit a house in which one of the family lay sick, and in anticipation of the death of the sick person, and while his or her relatives are hoping, as such will hope until the very hour and article of death, for recovery, solicit employment as undertakers, in the event of death; or might indulge in like solicitation after death had occurred and while the surviving members of the family, grief stricken, are mourning the decease of the loved one. Of undertakers so acting it might, not inappropriately, be said, "They are neither man nor woman; They are neither brute nor human; They are ghouls."

Solicitation for employment before the death or serious illness of any member of the family must, in order to be at all effective, be addressed to some member of the family having authority to employ an undertaker, or at least to influence such employment in the event of a death occurring in the family; and we think such solicitation would, in the majority of instances, if not in all, be offensive to the person solicited; and that, if such solicitation were general, it would tend to degrade the occupation of undertakers in public estimation. The language of section 8 indicates that such is the opinion of the Undertakers' Association. The association is a voluntary one, and not incorporated for pecuniary profit, as alleged in the bill, and its declared objects are "to secure harmony in business and to cultivate a more friendly spirit socially, and to elevate and bring to a higher state of perfection our profession; to disseminate correct principles of business management, the best method of protecting the interests of undertakers, as well as those of patrons, and to promote the interests of all recognized and legitimate undertakers." We think the members of this volun-

tary association had the right to agree to exclude personal solicitation of business as tending to degrade the business in public estimation, and that section 8 is not unreasonable.

We think The People v. Live Stock Exchange, 170 Ill. 556, cited by appellant's counsel, distinguishable from the present case. The Live Stock Exchange was a corporation organized for pecuniary profit. It enacted a by-law prohibiting the employment of any solicitor not a member of the exchange, and also prohibiting the employment of more than three solicitors for each firm, in certain states mentioned. The state's attorney for Cook county filed an information in the nature of *quo warranto* against the Live Stock Exchange, setting up the by-law, alleging its invalidity, and praying for the forfeiture of the charter of the corporation. The Live Stock Exchange was a corporation organized for pecuniary profit, and the suit was instituted by a public officer acting in the public interest, which the court recognizes, saying: "Efforts to prevent competition, and to restrict individual efforts and freedom of action in trade and commerce, are restrictions hostile to the public welfare, not consonant with the spirit of our institutions, and in violation of law." The Undertakers' Association is, as the court said of the Board of Trade of the city of Chicago, in Board of Trade v. Nelson, 162 Ill. 431, "merely a voluntary association, although incorporated under an act of the General Assembly," and the bill is filed not in the interest of the public, but solely in the interest of appellant.

The undertaker's business is peculiar and unlike any other business of which we have any knowledge, and while the general language used in the case cited, with reference to the facts of that case, is sufficiently comprehensive to include all kinds of business, we do not think it applicable to section 8 or to the business of undertakers. It is plain from appellant's bill that his ultimate object is to have the benefit of the agreement

between appellee and the liverymen's association, and
that the prayer to decree section 8 void is but a means
to the attainment of such ultimate object.   The bill
alleges that the liverymen's association is composed
of all the liverymen in Chicago, and that, by the agree-
ment, no undertaker not a member of the undertakers'
association can hire from a liveryman hearses, car-
riages, horses or drivers, and that the liverymen are
so connected with the undertakers' association that
they will not furnish the same to any undertaker not
a member of that association, or suspended from
membership in it.   Such is the agreement which appel-
lant, by his counsel, says is legal, while urging that
section 8 is illegal, and he asks the court to enable him
to enjoy the benefits of that agreement by declaring
section 8 illegal and enjoining the enforcement thereof,
thus preventing his suspension from membership in
the undertakers' association.   It does not appear from
the bill, nor is it claimed by counsel, that there was
any want of power to try appellant, or any irregular-
ity in the proceedings which resulted in his conviction
and punishment, which being true, we cannot review
the proceedings.   Board of Trade v. Nelson, 162 Ill.
431.

The decree dismissing the bill for want of equity
will be affirmed.

*Affirmed.*