NATIONAL LEAGUE OF COMMISSION MERCHANTS OF UNITED STATES v. HORNUNG.

(Supreme Court, Equity Term, Erie County.    May 17, 1911.)

1. EXCHANGES (§ 12*)—BY-LAWS—MEMBERS.

A membership corporation for the mutual benefit of commission merchants and for the best interests of shippers and receivers adopted by-laws providing (section 4) that, in the event of any dispute between a nonmember and a member, the nonmember may demand a trial of the case before the arbitration committee of the branch of which the other party is a member, and provides for appeal on dissatisfaction with the award within 60 days. Section 5 declares that if any member refuses to submit a disputed account to the branch league of which he is a member, as provided in section 4, he shall be expelled. *Held*, that section 4, read in connection with section 5, required arbitration of disputed ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

counts only between commission merchants and their principals arising out of sales on commission, and had no application to a dispute between a member and a nonmember arising out of an alleged breach of an absolute contract of sale.

[Ed. Note.—For other cases, see Exchanges, Dec. Dig. § 12.*]

2. EXCHANGES (§ 4*)—DIFFERENCES BETWEEN MEMBERS AND NONMEMBERS—ARBITRATION—POWERS.

A membership corporation organized under the laws of Illinois for mutual aid in business and promotion of best interests of shippers and receivers, promotion of good feeling among members with a special outlook for their welfare, and to encourage by all lawful means, was not authorized, either by the law under which it was organized, its charter purposes, or by implication, to provide for tribunals to settle disputes between members and nonmembers under penalty of expulsion for failure of a member to arbitrate or abide by the result of an arbitration.

[Ed. Note.—For other cases, see Exchanges, Dec. Dig. § 4.*]

3. CONTRACTS (§ 127*)—PUBLIC POLICY—BY-LAWS—OUSTING JURISDICTION OF COURTS.

By-laws of a membership corporation setting up tribunals to settle differences between members and nonmembers under penalty of expulsion for refusal to arbitrate or to abide by the award *held* contrary to public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 608–615; Dec. Dig. § 127.*]

4. EXCHANGES (§ 5*)—MEMBERS—EXPULSION—BY-LAWS.

Where a member of a factors' association was expelled for failure to perform an arbitration award after trial of a difference between such member and a nonmember before the various tribunals of the society, his expulsion could not be sustained by other by-laws providing for trial and expulsion of members on charges for fraud or for failure to pay a just bill, etc.

[Ed. Note.—For other cases, see Exchanges, Dec. Dig. § 5.*]

5. EXCHANGES (§ 4*)—BY-LAWS—INVALIDITY—WAIVER.

Though by-laws of a factors' association providing for tribunals to settle disputes between members and nonmembers under penalty of expulsion for refusal to arbitrate or abide by the result of an arbitration were beyond the powers of the corporation, they were not illegal in the sense that a member would not be bound by decisions thereunder after having voluntarily submitted himself to the jurisdiction so created, provided he had an impartial trial of the issue authorized by and conducted in conformity with the by-laws.

[Ed. Note.—For other cases, see Exchanges, Dec. Dig. § 4.*]

6. EXCHANGES (§ 5*)—EXPULSION OF MEMBER—CONTROVERSIES WITH NON-MEMBERS.

The constitution of a membership corporation of commission merchants provided for a trial of disputes between members and nonmembers by an arbitration committee to a branch of which a member belonged providing that either party might appeal to the branch league at a meeting to be held within 30 days thereafter, when the branch league must impartially try the case and report, and, if either party was dissatisfied with its decision, it might appeal to the national executive committee at its next annual session. Defendant, a member of the league, contracted to purchase potatoes, and, having refused to accept them, the seller claimed damages for loss on resale. Defendant consented to an arbitration before the arbitration committee of the league, pleaded the statute of frauds, called and examined witnesses, and from an adverse decision appealed to the branch league. On its appeal, of the eight judges who passed on his case, two were members of the arbitration committee, and

two others were witnesses for the seller. Defendant's protest against their taking part in the decision was overruled, and from an adverse decision defendant appealed to the executive committee, under a provision of the constitution providing that such committee shall "hear and decide" appeals from branch leagues. This committee consisted of 29 members, one of which was a member of the original arbitration committee; he taking part in its deliberations and arguing against defendant. The executive committee without a hearing, and after reading only a part of the evidence returned, decided that each party should stand half of the loss. *Held,* that defendant had neither a hearing nor a fair trial before an impartial tribunal, and that the league could not therefore expel him for refusing to perform its award.

[Ed. Note.—For other cases, see Exchanges, Dec. Dig. § 5.*]

Suit by the National League of Commission Merchants of the United States against George Hornung for an injunction to restrain defendant from holding himself out to be a member of plaintiff organization and from using its registered trade-mark. Decree for defendant. See, also, 126 N. Y. Supp. 1139.

August Becker, for plaintiff.
Frederick Haller, for defendant.

POUND, J. The National League of Commission Merchants of the United States is a membership corporation organized under the laws of the state of Illinois. It has a registered trade-mark or "league emblem," which members of the branch leagues use on their business stationery. It may have one or more "branch leagues" in each state in the Union, and has about 30 such branch leagues in the larger cities. Its object, as stated in the articles of incorporation, is "mutual aid in business, promotion of the best interests of shippers and receivers, and to promote good feeling among all its members with a special outlook for their welfare and to foster and encourage, by all lawful and proper means and in a fraternal and friendly spirit by organized effort, their welfare." The Buffalo Branch League consists of commission merchants doing business in the city of Buffalo. Its members pledge themselves "to use our united efforts to correct abuses, and to protect the grower and shipper from fraud, misrepresentation and injustice." Defendant became a member of the Buffalo Branch in the year 1894.

All branch leagues have an "Arbitration Committee." It is provided (Constitution and By-Laws National League, art. 18):

"Sec. 4. In the event of any dispute, or difference, arising between a party not a member of the league and a member of any branch league, the party not a member may demand a trial of the case before the Arbitration Committee of the branch of which the other party is a member, and it shall be the duty of said Arbitration Committee within thirty days to take up the matter and within ninety days report their decision to both of the parties interested. In the event of either party being dissatisfied with the decision rendered by the Arbitration Committee, they shall have the right to appeal the matter to the branch league at a meeting to be held within thirty days thereafter, and the said branch league must impartially try the case and report their decision to both of the interested parties. Should either of the parties at interest be dissatisfied with the decision so rendered they may appeal the case to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the National Executive Committee at its next annual session, provided the party not a member shall declare his willingness in writing to abide by the decision of the said National Executive Committee, and the amount awarded by the National Executive Committee shall be paid within sixty days.

"Sec. 5. Should a member of any branch league refuse to submit a disputed account to the branch league of which he is a member, as provided for in section 4 of this article, he shall be deemed unworthy of membership, and on conviction of such refusal by the branch league of which he is a member he shall be expelled from membership, and notice of the said expulsion shall be sent to the Secretary of the National League, who shall order the expelled member's name to be stricken from the roster of membership in any and all papers, or periodicals, in which the roster of the League membership is published, and notice sent to all Branch Leagues."

A claim against the defendant was presented by the firm of L. G. Loomis & Sons, not a member of the league, in the spring of 1908, arising out of an alleged sale, not on commission, of a car load of potatoes which defendant had refused to accept. Loomis & Sons claimed damages for loss on resale. Defendant consented to arbitrate the dispute, appeared by attorney, justified, set up the statute of frauds as a defense, and called witnesses. The arbitration committee tried the case and made its decision adverse to defendant for the sum of $70.31 damages and $10 stenographer's fees. He appealed to the branch league, where a new trial was had. Defendant again appeared by attorney, and called and examined and cross-examined witnesses. The decision of the branch league was also adverse to defendant. He then appealed to the national executive committee; the adverse party having declared its willingness to abide by the decision of such committee. The executive committee on January 30, 1909, reduced the amount awarded against defendant by one-half. Defendant did not pay the award, although he was notified by the chairman of the executive committee of its decision.

The by-laws of the Buffalo Branch (article 12, § 2) provide as follows:

"Sec. 2. Any member or firm failing to settle a dispute as decided by the Arbitration Committee, unless such decision is appealed from, or who shall refuse or neglect to settle the same as ordered by the Branch League or the Executive Committee of the National League, as the case may be, after an appeal to them, shall after sixty days be dropped from the list of members and the Secretary of the National League notified thereof."

Defendant's name was dropped from the list of members of the Buffalo Branch, and the secretary of the National League was notified thereof. Defendant nevertheless continued to use the league emblem, and to hold himself out as a member of plaintiff until restrained by temporary injunction, which plaintiff now seeks to have made permanent.

[1] The first question arises as to the meaning and validity of the by-laws of the National League first above quoted, providing for arbitration of disputes and differences arising between a party not a member of the league and a member of any branch league. By-Law, § 4, must be read in the light of By-Law, § 5, which refers to disputed accounts only, and in the light of the purpose for which the corporation is formed—"the promotion of the best interests of shippers and receivers." So limited by reasonable construction, section 4 relates

only to the arbitration of disputed accounts between commission merchants and their principals arising out of sales on commission, and would have no application to the dispute between Loomis & Sons and defendant.

[2] The initiative is taken in such cases by the demand of the party not a member of a trial of the case against a member before the arbitration committee. A member may be expelled for refusal to submit the disputed account to the arbitration committee or for refusal to settle the dispute as decided. In other words, the plaintiff has attempted to set up a tribunal before which any person not a member can compel a member to litigate a disputed account on penalty of expulsion. Power is sometimes specifically granted to a corporation "to adjust controversies and misunderstandings between persons engaged in business," and, in connection therewith, to expel a member as provided by the by-laws, as in the case of the New York Produce Exchange. See 149 N. Y. 419, 44 N. E. 87. No such power is granted by the law under which plaintiff was incorporated. Can such power be implied? "When a corporation is created, there goes with it the power to enact by-laws for its government and guidance as well as for the guidance and government of its members. The power is necessary to enable a corporation to accomplish the purpose of its creation. But by-laws must be reasonable for a corporate purpose, and always within charter limits. They must always be strictly subordinate to the Constitution and the general law of the land. They must not infringe the policy of the state nor be hostile to public welfare." People v. Chicago Live Stock Exchange, 170 Ill. 556, 48 N. E. 1062, 39 L. R. A. 373, 62 Am. St. Rep. 404. The most liberal construction of the plaintiff's corporate purposes fails to suggest any power to set up tribunals to settle disputes and differences between members and nonmembers under penalty of expulsion of a member for refusal to arbitrate or to abide by the result of an arbitration. "To create a judicial tribunal is one of the functions of the sovereign power." Austin v. Searing, 16 N. Y. 112, 123, 69 Am. Dec. 665. The delegation of such sovereign power to a membership corporation, although organized "to promote good feeling" will not be lightly implied.

[3] It follows that By-Laws, §§ 4, 5, are outside the corporate purpose and against public policy.

[4] Other by-laws (article 18, §§ 3, 7) provide:

"Sec. 3. Any member of this association shall be expelled from membership when the Arbitration Committee of his or their branch finds him guilty of fraud, or failure to pay a just bill, within sixty days unless he shall have given notice of appeal to the National Executive Committee, but shall not be expelled where it is a difference as to the construction of a contract, which a court of law only should decide, unless the aggrieved party shall agree to abide by the decision of the Arbitration Committee of the branch of which the defendant may be a member.

"Further, that nothing in this section shall be construed to prevent either party from appealing to the Executive Committee of the National League, as now provided in sections 1 and 2 of this article."

"Sec. 7. Should a member against whom a complaint has been filed refuse to appear before the Arbitration Committee of his Branch to answer the charge, the Arbitration Committee shall so report at its next regular meeting of the Branch and unless satisfactory explanations for his not doing so are presented, he shall at once be expelled."

The arbitration committee was not considering the question of the misconduct of defendant on a complaint against him. It was trying the case of Loomis & Sons against defendant, and defendant's expulsion cannot be sustained under this section.

Another by-law (article 18, § 1) provides:

"Section 1. It shall be the duty of the Arbitration Committee to * * * endeavor to settle differences between a member of any branch league and a party in any place who is not a member of the league."

This doubtless applies to any dispute which the parties consent to submit to the arbitration committee, such as the claim of Loomis & Sons against defendant. Parties may make a tribunal for themselves in a specific case. Austin v. Searing, supra.

Furthermore, it is urged that defendant waived all jurisdictional questions and all questions of corporate powers and all right to question the validity of the application of the plaintiff's by-laws when he became a member, and thus consented to be governed by the constitution and by-laws, and, specifically, when he consented to the trial under sections 4 and 5, above quoted, and that he cannot now be heard to challenge the jurisdiction of the arbitration committee, the branch league, or the national executive committee, or the power of the branch league to expel him from membership. He consented to the arbitration of the question of liability, it is true, and that might justify a holding that he consented to be expelled from membership in the corporation if he failed to abide by the result. "A member of a corporation may so hedge himself in by agreement as to yield the protection which one seeks in the ordinary affairs of life, and enlarge the authority which may be used against him." In re Haebler v. N. Y. Produce Exchange, 149 N. Y. 414–427, 44 N. E. 87, 91.

[5] Although the by-laws were beyond the powers of the corporation, they were not illegal in the sense that defendant would not be bound by a decision thereunder after having submitted himself to the jurisdiction created thereby. Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664. He was, however, entitled to a fair and impartial trial of the issue between himself and Loomis & Sons, authorized by and conducted in conformity with the by-laws. People ex rel. Johnson v. N. Y. Produce Exchange, 149 N. Y. 401, 409, 44 N. E. 84.

[6] The procedure of the arbitration committee seems to have been formal and regular. On appeal for a new trial to the branch league of the eight judges who passed on his case, two were members of the arbitration committee and two others were witnesses for Loomis & Sons. Defendant protested against their taking part in the decision, but his protest was unheeded. Such a tribunal may have done justice in defendant's case on the law and the evidence as between him and Loomis & Sons. With the merits of its decision thereon we have no concern. Into the regularity of the proceedings the court will inquire. "Members are entitled to fair dealing and to have their substantial rights protected." People ex rel. Johnson v. N. Y. Produce Exchange, supra. The most meritorious defense would scarcely succeed before a court composed of adverse judges and hostile witnesses,

fresh from the trial below. The appeal to the national executive committee may, however, be said to have amounted to a waiver of defendant's objections to the competency of his judges on the trial below, except as he might urge such objections before the appellate body.

The constitution and by-laws of the National League (article 5, § 6) provides that:

"The executive committee shall * * * hear and decide appeals from branch leagues."

This committee consisted of 29 members, one from each "branch league." The representative of the Buffalo Branch was a member of the arbitration committee, but not one of the members of the branch league who passed on the case. It is undisputed that he was present at the session of the executive committee at which defendant's appeal was acted upon, took part in its deliberations, and argued against defendant. The executive committee refused to permit the parties to appear before it on the hearing of the appeal. It is not urged that defendant was entitled to a new trial before the executive committee, and a hearing does not necessarily imply oral argument, but he was entitled to a hearing; i. e., a judicial examination of the record by the committee, and to a decision based on such hearing. This he did not have. After the executive committee had acted, the chairman had a conversation with defendant. Defendant testifies, and without contradiction:

"I made the remark, I says: 'You got through in a hurry with all that evidence.' He says, 'It was not all read,' went over it only partially, what he thought was the most salient points."

The decision of the executive committee that each party in interest pay one-half was analogous to the verdict of a jury for the plaintiff in the sum of $500 in an action on a promissory note for $1,000, where the sole defense was forgery. Defendant was not litigating the question of the amount of damages. The issue was one of liability only. He relied mainly on the statute of frauds. The question was one of law "which a court of law only should decide." By-Law, § 3, supra. Such a compromise decision in this case, if fairly arrived at, would not be reviewed by the court, but it bears out my conclusion that defendant had no "hearing" before the executive committee, and that the committee made no judicial examination of the record, but proceeded arbitrarily and summarily without regard for that elemental justice which hears before it condemns, proceeds upon inquiry, and renders judgment after trial. It does not appear that the executive committee considered defendant's protest against the participation of members of the arbitration committee and adverse witnesses in the decision of the branch league. Its action was not judicially taken. It was not within the rule which excuses mere informality when substantial rights are preserved.

It follows that plaintiff cannot have the aid of equity in restraining defendant from the use of the league emblem or from continuing to assert his membership, but that defendant is entitled to judgment that he has not been lawfully expelled.

Decision accordingly.